MERLY ET AL., APPELLANTS, v. THE REGISTRAR OF GUAYAMA, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Denying Admission to Record of a Deed of Partition.

No. 204.—Decided April 30, 1915.

RECORD OF TITLE—CONSOLIDATION OF PROPERTIES—PROPERTIES OF HEIRS IN COMMON PRO INDIVISO—RECORD IN NAME OF PREDECESSORS.—In accordance with subdivision 4 of article 61 of the Mortgage Law Regulations, properties acquired by heirs in common and *pro indiviso* may be consolidated and recorded under one number in the registry of property even when such properties are recorded in the names of different predecessors in interest, but the consolidated property cannot be recorded without first recording the common and undivided joint-ownership in the names of the heirs.

ID.—APPLICATION FOR RECORD.—When the instrument contains different acts and contracts subject to record, the applicant must state to the registrar what entries and records he desires him to make in the registry, presenting his petition in clear and specific terms.

ID.—DUTY OF REGISTRAR.—When the registrar understands that he is asked to record all the operations set out in the instrument presented which are capable of being recorded, he should either record or refuse to record each of such operations, and in case of refusal, state clearly and specifically at the foot of the instrument the legal grounds for his refusal, as provided by section 1 of the Act of March 1, 1902, providing for appeals from decisions of registrars.

ID.—CAUTIONARY NOTICE.—Section 7 of the Act of March 1, 1902, makes it the duty of the registrar to enter a cautionary notice to be effective for the legal period of 120 days from the date thereof, whenever he refuses to make any record, entry, or cancellation.

The facts are stated in the opinion.

*Mr. Manuel A. Rivera* for the appellants.

The respondent registrar did not appear.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On November 16, 1911, a deed was executed before Notary Manuel Antonio Rivera y Martínez in the town of Aibonito by Juan Pedro, Gerardo, Jesús María, Crescencia, Petronila, María Florencia and María Luisa Merly y Rivera and Amparo Santini y Cuesta, the first seven in their own right and the eighth both in her own right and in representation of her minor children Francisca, Josefa, Consuelo and José Ramón Merly y Santini, who were under her *patria potestas.* The object of the deed was to partition the estate of the spouses Pedro Juan Merly y Rodríguez and Petronila Rivera y Colón who died on May 5, 1889, and January 30, 1900, respectively, leaving a joint will executed on May 3, 1889. Upon presentation of said deed in the Registry of Property of Guayama it was denied admission to record by the registrar for the reasons set out in the following decision:

"Admission to record of the foregoing document is denied (1) because the consolidation requested cannot be made, for, according to subdivision 4 of article 61 of the Regulations of the Mortgage Law, in order to consolidate adjoining parcels of land they must belong to the same person or to several persons *pro indiviso,* and in the present case three of the parcels belong to Pedro Juan Merly and one to Petronila Rivera y Colón, who acquired it while a widow; and (2) because of the inclusion in this same deed of various inheritances and concessions without first complying with the provisions of article 85 of the same Regulations, which, as well as article 20 of the Mortgage Law, requires a previous record of the same."

From the above decision an appeal has been taken to this court by Juan Pedro, Gerardo, Jesús María and Crescencia

Merly y Rivera, represented by Attorney Manuel A. Rivera, praying for its reversal and for an order to the registrar to record the deed of partition as presented in the registry.

In order to determine whether the decision appealed from is conformable to law, it is necessary to set out the provisions of the deed of partition relative to the consolidation of properties and to the inheritances and concessions to which the said decision may refer.

On these points the deed of partition states the following as facts:

*First.* In the joint will executed by the spouses Juan Merly y Rodríguez and Petronila Rivera y Colón they bequeathed one-fifth of their property to their son Juan Pedro and three cows and two calves to their daughter Petronila, designating as their sole and universal heirs the aforesaid Juan Pedro and Petronila and their other children, José María, Jesús María, Gerardo, Julián María, Leocadia, Crescencia, María Florencia and María Luisa Merly y Rivera.

*Second.* José María Merly y Rivera, one of the heirs, died intestate on March 14, 1901, and on February 13, 1911, the District Court of Guayama instituted his children Francisca, Josefa, Consuelo, José Ramón and Petronila Merly y Santini as his heirs, without prejudice to the usufruct of his widow, Amparo Santini Cuesta; and as Petronila had died on November, 5, 1902, at the age of two years, the court by the said order named her mother, Amparo Santini Cuesta, as her heir.

*Third.* Julián María Merly y Rivera, another heir, also died intestate on December 28, 1909, without leaving any ascendants or descendants, and by its order of February 13, 1911, the District Court of Guayama declared his heirs to be his brothers Juan Pedro, Jesús María and Gerardo, his sisters Leocadia, Petronila, Crescencia, María Florencia and María Luisa, and his nephews and nieces Francisca, Josefa, Consuelo and José Ramón Merly y Santini, the last four as representatives of their deceased father, José María Merly

y Rivera; the brothers and sisters to inherit *per capita* and
the nephews and nieces *per stirpes*.

*Fourth.* Another heir, Leocadia Merly y Rivera, also died
on August 4, 1911, without issue, leaving a will executed on
August 2, 1911, by which she bequeathed a red cow and a
calf to her niece Angelita, the daughter of Gerardo Merly,
and devised the joint interest which she owned in the house
in which she lived and four *cuerdas* of land to her sister Flo-
rencia Merly, and two and three *cuerdas* of land respectively,
of the tract which she was to inherit from her parents, to
Jesús María and María Luisa, her brother and sister. She
set out in the will that a small house on Baldorioty Street
of the town of Aibonito, which she had purchased from Do-
mingo Ríos, belonged to her brother Jesús Merly notwith-
standing the fact that it appears in her name in the deed
of sale, and therefore ordered her executor to transfer her
title under the said deed to Jesús María. She named her
brothers and sisters Juan Gerardo, Jesús, Petronila, Cres-
cencia, María Florencia and María Luisa Merly as heirs to the
residue of her property.

*Fifth.* By a public deed executed on March 2, 1894, José
María Merly sold to his brother Juan Pedro all his right,
title and interest in the estate of his deceased father, but in
the deed of partition whose admission to record has been
denied Juan Pedro stated that although the sale appeared
as made to him it was really made to all the succession of
his deceased father, Pedro Juan Merly, from which succes-
sion he received the purchase price.

*Sixth.* Gerardo Merly also stated in the deed of partition
that he had conveyed his interests in the estate of his father
to the latter's succession and had received therefrom the
value thereof. He further stated that, privately and with
the consent of all the heirs, he had taken and received his
portion of the estate of his mother, Petronila Rivera, and
that therefore he had no other rights in the partition than

his share of the estates of his brother Julián María and sister Leocadia Merly, deceased.

*Seventh.* Juan Merly; heir to the fifth part of the estates of his parents under the joint will of May 3, 1889, stated in the deed of partition that he accepted the said legacy in so far as it was made by his father, but renounced the part left him by his mother in favor of the other heirs.

*Eighth.* The dual estate also contained four rural properties in the ward of Cuyón of the municipal district of Aibonito, which are all recorded in the registry of property and described as follows:

*a*) A property of fifty *cuerdas* acquired by deed of April 24, 1871, which contains a two-story house of native lumber with a galvanized iron roof, a masonry drying yard, four wooden drying sheds, a frame house partly roofed with zinc containing a coffee-hulling machine, and another frame house with a corrugated iron roof used as quarters for peons.

*b*) Another property of six *cuerdas* acquired by a public deed of April 5, 1877.

*c*) Another rural property with an area of thirty-five *cuerdas* acquired by a public deed of June 20, 1881.

*d*) Another rural property of fifty *cuerdas* acquired by widow Petronila Rivera by a deed of March 5, 1894.

The said four properties, which are said to be adjoining, are consolidated into one single property of 141 *cuerdas* situated in the ward of Cuyón of the municipal district of Aibonito and described by boundaries. This property contains the three houses referred to in describing the property under letter "A," and the interested parties desired that the property should be recorded in the registry as consolidated.

*Ninth.* The estate contains also another rural property of sixteen and a half *cuerdas* of land called "La Bartola" situated in the ward of Cuyón of Aibonito and acquired by a deed of April 13, 1898, which property is not yet recorded in the registry of property, and a house built of native lumber situated in Pavía Street in the town of Aibonito which

was acquired by a public deed of April 23, 1885, and which is recorded in the registry of property.

The value of the inventoried estate to be partitioned is $6,725, and after deducting $322.40, the amount due to Juan Pedro Merly y Rivera, there remains a net total of $6,402.60, or $3,201.30, from each spouse.

Deducting the legacy of one-fifth of the paternal estate left to Juan Pedro Merly, said estate is reduced to $3,041.235 (*sic*) or $304.123 for each heir when divided among the ten. On the other hand, the maternal estate, plus the shares which José María and Gerardo inherited from their father and transferred to the succession, is increased to $3,809.546, or $423.28 2/9 for each heir, since Gerardo had received his share some time before and that amount is to be distributed among nine heirs only.

After calculating the amount of the share which each heir was entitled to inherit from Pedro Juan Merly and Petronila Rivera Colón, deceased, and from the deceased co-heirs, taking into account also the other facts necessary for determining the legitime of each heir, allotments to cover the quotas of the heirs were made in the deed of partition, the consolidated property, both as to the land and the buildings thereon, being divided among Jesús María, Gerardo, Petronila, Crescencia, María Florencia, María Luisa and Juan Pedro Merly y Rivera, the four minor children of José María Merly y Rivera and his widow, Amparo Santini. The entire rural property called "La Bartola" was allotted to Juan Pedro and various joint-ownership interests in the house situated on Pavía Street of the town of Aibonito were allotted to the said Jesús María, Petronila, Crescencia, María Florencia, María Luisa and Juan Pedro Merly y Rivera.

By the same deed of partition Juan Pedro and Jesús María Merly y Rivera sold to their sisters Petronila, Crescencia, María Florencia and María Luisa Merly the joint interests which the brothers had with the sisters in the house situated in Pavía Street, and Amparo Santini also sold to Juan

Pedro Merly y Rivera her interest in the building containing the coffee-hulling machine on the consolidated property.

In the light of the foregoing facts we will consider the decision appealed from.

The appellants allege that the consolidated property should be recorded because the four properties of which it is composed became the property of the heirs of Pedro J. Merly and Petronila Rivera by testate inheritance upon the death of the testators and, therefore, because it belongs to several persons *pro indiviso* although they acquired it from different sources.

Article 61 of the Regulations for the execution of the Mortgage Law reads as follows:

"The following shall be recorded under a single number if the interested parties should so request, being considered as a single estate, in accordance with article 8 of the law, and for the purposes therein stated.

*       *       *       *       *       *       *

"Fourth. Adjoining tracts of land belonging to the same person, or to a number of persons *pro indiviso,* even though they contain no place of shelter whatsoever and their origin is not identical, and even though they shall have come into the possession of the last holder from different sources."

In the present case three of the consolidated properties were acquired before the death of Pedro Juan Merly and the fourth was acquired by his widow, Petronila Rivera, after his death, the said properties being recorded, therefore, in the registry in the names of different persons. Upon the death of Pedro Juan Merly and Petronila Rivera their children became the owners in common and *pro indiviso* of the four properties and their right as such heirs to consolidate the property is unquestionable, but the consolidation cannot be recorded in the registry until the common and undivided interests have been recorded previously in the names of the said heirs. When this has been done the allotments made

of the consolidated property in the deed of partition may be recorded.

Although the appellants allege that when they presented the deed of partition of the estate in the registry of property with the accompanying explanations it was for the purpose of having the registrar give it due consideration and make such entries on the records as he might deem proper, it does not appear that they actually requested that each of the four consolidated properties should be recorded in the names of the heirs of Pedro Merly and Petronila Rivera. On this point the said deed only recites that the parties thereto desired the consolidation of properties to be recorded in the registry. It being a fact that the registrar only refused to record the consolidation, we have to decide nothing more than whether he was justified in so doing. We are of the opinion that the refusal was proper for the reason that the joint-ownership of each of the consolidated properties had not been recorded previously in the registry in the names of the heirs in common *pro indiviso,* although they cannot be denied the right to apply to the registry for such previous records in order to put themselves in a position to obtain the recording of the consolidation and of the allotments to which it gave place.

As the deed of partition contained not only the consolidation but other operations capable of being recorded, the appellants should have pointed out what entries they desired the registrar to make in the registry by drafting their application in specific and definite terms instead of in a vague manner so as to commit to the registrar, as it were, the defense of their rights. *Ramis v. The Registrar of Property,* 19 P. R. R., 712.

Moreover, if the registrar was requested to record all the operations subject to record contained in the deed of partition presented to him, and he so understood, it was his duty to record or refuse to record each of said operations and, in case of refusal, to set out clearly and concisely at the foot

of the document the legal reasons for such action, as prescribed by section 1 of the Act of March 1, 1902, providing for appeals from the decisions of registrars of property.

The Registrar of Property of Guayama did not comply with that duty, for the inclusion in the deed of several inheritances and concessions, as stated by him in his decision, without complying with the provisions of article 85 of the Regulations of the Mortgage Law, which, as well as article 20 of the Mortgage Law, requires a previous record, is not a legal ground applicable to each and all of the records which might be called for by the deed; and this is proven by the fact that although there was a rural property, "La Bartola," which was not recorded in the registry, there were others designated by the letters *a, b, c, d* and the house situated on Pavía Street in Aibonito, which were so recorded. Nor did he even take care to set out that as the consolidated property was not recorded and as he refused to record it, he could not record the parcels of the said property allotted to different heirs.

The registrar really refused only to record the consolidated property and made no reference in his decision to any of the other records which he might have been requested to make so as to enable us to know exactly what records he refused. We can consider the decision appealed from only in so far as it refuses admission to record of the consolidated property.

Furthermore, the registrar did not even comply with the duty imposed upon him by section 7 of the Act of March 1, 1902, which provides that whenever a registrar shall refuse to make any record, entry or cancellation he shall enter a cautionary notice which shall have legal effect for 120 days from the date of its entry.

For the foregoing reasons the decision appealed from is affirmed as regards the refusal to record the consolidated property, without prejudice to the rights of the interested parties to apply again to the registry with the necessary documents for recording the common and undivided ownership

of each of the four properties in the names of the heirs of Pedro Juan Merly and Petronila Rivera as an essential basis for obtaining the record of the consolidation of the said properties, the court being unable to decide as to the recording of any other operation contained in the deed of partition on account of the lack of a specific and definite decision by the respondent registrar.

> *Judgment affirmed without prejudice to the right of the appellants to apply again to the registrar with the proper documents.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.